UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS MENGE, | ) | CASE NO. 11-CV-226 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Thomas Menge's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below the Court VACATES the decision of the Commissioner and REMANDS this case back to the Social Security Administration.

I. INTRODUCTION & PROCEDURAL HISTORY

On July 2, 2007, Plaintiff Thomas Menge ("Plaintiff" or "Menge") protectively filed an application for a Period of Disability and Disability Insurance benefits alleging that he became disabled on August 1, 2000 due to problems relating to pain in his back. (Tr. 52, 106-108, 175). Menge's insured status terminated on December 31, 2005. (Tr. 52). Plaintiff's application was denied initially and upon reconsideration. (Tr. 52-53). Thereafter, Plaintiff requested a hearing to contest the denial of his application for benefits. (Tr. 72-73). The Social Security Administration granted Dixon's request and scheduled a hearing before an administrative law judge. (Tr. 74-81).

On December 2, 2009, Administrative Law Judge Thomas Ciccolini (the "ALJ") convened a hearing to evaluate Plaintiff's application for benefits. (Tr. 28-49). Plaintiff appeared with counsel and testified before the ALJ. (*Id.*). Vocational expert, Mr. Mark Anderson (the "VE") also appeared and testified. (*Id.*). On January 25, 2010, the ALJ issued an unfavorable decision finding that Plaintiff was not entitled to benefits. (Tr. 8-21). In reaching his decision, the ALJ applied the five-step sequential analysis,[1] and concluded that Menge retained the ability to perform work which existed in significant numbers in the national economy. (*Id.*). Following the issuance of the ALJ's opinion, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 7). However, the council denied Menge's request thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Menge now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on June 3, 1964, was 41 years old on the date his insured status terminated, and 45 years old at the time of the hearing before the ALJ. (Tr. 52, 32, 19). Accordingly, at all relevant times Menge was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c).[2] Menge graduated from high school and has past experience working as an assistant manager at a retail home improvement store. (Tr. 52, 167).

## II. MEDICAL EVIDENCE

In May 1999, Plaintiff suffered an injury while working. (Tr. 233). Plaintiff told doctors that he began to experience back pain after he had carried carpets from a truck into the warehouse of his place of employment. (*Id.*). Plaintiff filed a worker's compensation claim in relation to this injury. *See* (Tr. 92-104). Shortly after the incident, Menge presented to the emergency department of Southwest General Health Center for examination. (Tr. 230). Doctors there diagnosed Menge with a lumbosacral strain. (*Id.*). Magnetic resonance imaging ("MRI") performed in July 1999 revealed central disc herniations at T12-L1, L4-5 and L5-S1. (Tr. 234). The MRI report also noted "probable transitional lumbosacral segment." (*Id.*).

On February 3, 2000, Plaintiff's treating physician, Dr. Sunil Kansal assessed Plaintiff's residual functional capacity ("RFC") in a report. (Tr. 244). It appears that Dr. Kansal prepared this report in relation to Menge's worker's compensation claim. In it, the doctor indicated that in an eight-hour workday, Menge could not sit, stand, walk, or drive for more than two hours,

---

[2] The Social Security Administration acknowledges that claimants between the age of 45 and 49 may be "more limited in their ability to adjust to other work than persons who have not attained age 45." 20 C.F.R. § 404.1563(c).

respectively for each task. (*Id.*). Dr. Kansal opined that Menge could not bend, stoop, crawl, climb, reach above shoulder level, crouch, kneel, push, pull, twist, or lift or carry more than 25 pounds. (Tr. 244-45). However, Dr. Kansal concluded that Plaintiff could occasionally squat and lift or carry items weighing 24 pounds or less. (*Id.*). Additionally, the doctor noted that Menge was precluded from performing work requiring him to make repetitive movements with his feet. (*Id.*). But, Dr. Kansal estimated that Menge would be able to return to regular work activities on February 28, 2000. (*Id.*).

Dr. Kansal also expressed opinions about Menge's back problems in a letter dated October 13, 2000. (Tr. 233). The letter was addressed to an attorney, presumably in relation to Plaintiff's worker's compensation claim. (*Id.*). In the letter, Dr. Kansal explained that he originally diagnosed Plaintiff with a lumbar sprain because Plaintiff's straight leg raising test was negative. (*Id.*). But, the doctor noted that as of August 23, 2000, Plaintiff's straight leg raising test became positive in both of Plaintiff's legs. (*Id.*). Accordingly, Dr. Kansal opined that Plaintiff's lumbar sprain had progressed and changed into lumbar radiculopathy, and that Plaintiff would need to be evaluated by a neurosurgeon to assess Plaintiff's degree of nerve impingement and further treatment. (*Id.*).

Another MRI of Plaintiff's lumbar spine was performed on May 8, 2001. (Tr. 252). The imaging revealed "degeneration/dehydration and central bulging at L4-5 and L5-T with similar changes at D12-L1." (*Id.*). But, upon comparison, doctors did not note any significant change between Plaintiff's current MRI results and those reached in 1999. (Tr. 253).

On March 12, 2002, Plaintiff presented to Dr. Gordon Zellers for a consultative examination in connection with his worker's compensation claim. (Tr. 254-57). On April 10, 2002, Dr. Zellers prepared a report detailing his examination of Menge. (*Id.*). In documenting

4

Menge's treatment history after his accident at work, Dr. Zellers noted that Menge had attended eight weeks of physical therapy, been prescribed several pain medications and had received "two series of three epidural steroid injections." (Tr. 255). Dr. Zellers found Plaintiff to be alert, oriented, and in no acute distress, although the doctor observed Plaintiff appeared "somewhat uncomfortable during the examination." (Tr. 256).

In the concluding section of Dr. Zellers's report, he opined that Plaintiff was unable to return to his prior full-time employment. (*Id.*). But, the doctor indicated that Plaintiff would be able to perform work meeting the following limitations: sedentary to modified light duties; lifting no more than 20 pounds on an occasional basis; walking for no longer than 45 minutes at a time; standing for no more than 10 minutes at a time; sitting for no more than 20 minutes at a time; exclusion of all repetitive labor activities involving the lower extremities; no climbing; no bending responsibilities; no exposure to excessive vibratory stimuli; and no above ground work posing a threat to Menge's safety. (Tr. 256-57). Dr. Zellers also recommended that Menge be permitted to freely change body positions at work and not be permitted to work when under the influence of sedative type medications which would pose a threat to Plaintiff's safety. (Tr. 257).

On September 30, 2002, state agency reviewing physician, Dr. Robert Norris reviewed Menge's medical file and completed a physical RFC assessment form. (Tr. 259-66). Dr. Norris opined Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 260). The doctor also opined Plaintiff was capable of standing, walking or sitting for six hours each workday, and retained an unlimited ability to push or pull. (*Id.*). Additionally, Dr. Norris concluded Plaintiff's medical record "d[id] not show that [his] low back condition [wa]s sufficiently severe" to cause Menge difficulty with walking, standing or sitting. (Tr. 264). On

5

May 14, 2003, state agency physician, Dr. Willa Caldwell, affirmed Dr. Norris's findings as written. (Tr. 266).

After Plaintiff's disability benefits expired in December 2005, he was again seen by consultative examiner, Dr. Gordon Zellers. (Tr. 429-34). Dr. Zellers's report included a detailed synopsis of Plaintiff's medical history, including reference to 12 surgical operations Plaintiff underwent in relation to his pain pump. (Tr. 430-31). During this examination, Plaintiff informed the doctor that he was only able to tolerate walking and standing for five minutes at a time, and sitting for ten minutes at a time. (Tr. 432). However, upon examination, Dr. Zellers observed Plaintiff to be oriented and in no acute distress, although Menge appeared very uncomfortable during the exam. (*Id*.). Ultimately, the doctor placed several restrictions on Menge's ability to work. Dr. Zeller limited Plaintiff to: sedentary activities; a three pound maximum lifting restriction; and work duties free of prolonged sitting, standing ambulating, climbing, bending, twisting, squatting, repetitive leg activities, vibratory stimuli and above ground work. (Tr. 434). In addition, Dr. Zellers noted that Plaintiff should be permitted to change body positions as needed throughout the workday, and that Plaintiff "must be permitted to place himself in a supine position on a p.r.n. basis to assist with chronic pain control." (*Id*.).

In September 2007, state agency reviewing physician, Dr. W. Jerry McCloud, reviewed Plaintiff's medical file and completed a physical RFC evaluation. (Tr. 519-26). Dr. McCloud's findings largely mirrored those of the two prior state agency physicians with regard to Menge's ability to lift, carry, stand, sit and walk. (Tr. 520). However, Dr. McCloud also noted that Plaintiff should only occasionally climb, balance, stoop, kneel or crouch. (Tr. 521). Furthermore, he found that Plaintiff's symptoms were attributable to a medically determinable impairment. (Tr. 524).

On May 27, 2009, Plaintiff presented to Dr. Alicia Ondrejech for an appointment. (Tr. 532). During the visit, Plaintiff complained of low back pain and sought an adjustment of his pain pump. (*Id.*). Menge reported to the doctor that he was over his daughter's house the prior weekend playing with his granddaughter and had "overdid a lot of activities" causing him low back pain. (*Id.*). Menge also informed the doctor that he planned to travel to North Carolina for six weeks. (*Id.*). Dr. Ondrejech observed Menge to be alert, oriented, in no acute distress and ambulating well. (*Id.*). The doctor adjusted Plaintiff's pain pump medication.

### III. ALJ's RULING

The ALJ made the following findings of fact and conclusions of law in his application of the five-step evaluation process. At step one, the ALJ found that Menge had not engaged in substantial gainful activity since his alleged disability onset date of August 1, 2000. (Tr. 13). At step two, the ALJ held that Plaintiff's back pain was the only severe impairment from which Menge suffered. (*Id.*). But, at step three, the ALJ ruled that this impairment did not meet or equal one of the listed impairments set forth in 20 C.FR. Part 404, Subpart P, Appendix 1. (Tr. 13-15). Before moving to the next step, the ALJ assessed Menge's RFC to work. (*Id.*). The ALJ concluded that Menge retained the ability to perform a limited range of sedentary work. (Tr. 15). For instance, the ALJ noted that Plaintiff could not perform work which required exposure to moving machinery, hazards, unprotected heights, or frequent stooping or bending. (*Id.*). Additionally, the ALJ found that Plaintiff required a position which permitted a sit/stand option. (*Id.*). Based upon these findings, at the fourth step in the evaluation process, the ALJ held that Plaintiff could not return to his past work as an assistant manager because the requirements of the job exceeded Plaintiff's present RFC. (Tr. 19). But, at the final step of the analysis, the ALJ ruled that there were other jobs, existing in significant numbers in the national

economy, which Plaintiff could perform. Specifically, the ALJ indicated that Menge could work as an information clerk, personnel scheduler, or inspector of printed circuit boards. (Tr. 20).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.

1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff asserted three issues for the Court to review. First, Plaintiff challenged whether the ALJ erred by failing to assign controlling weight to the opinions offered by Menge's treating physician, Dr. Sonil Kansal. Second, Plaintiff questioned whether the ALJ properly discredited his testimony regarding his allegations of disabling pain. Finally, Menge argued that the hypothetical question the ALJ posed to the VE did not accurately depict all of his limitations. Because the Court finds that Menge's second assignment of error has merit, the undersigned remands the case back to the Social Security Administration.

### 1. Plaintiff's Credibility

Menge argues that substantial evidence does not support the ALJ's discounting of his credibility regarding his back pain and the accompanying symptoms. "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (*quoting Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)). This circuit follows a two-part test in evaluating complaints of disabling symptoms, including pain. 20 C.F.R. § 404.1529(c); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the

9

claimant's symptoms. 20 C.F.R. § 404.1529(c). Second, if the ALJ finds that an underlying impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.* In evaluating the claimant's symptoms, the ALJ should consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms. *Id.; Felisky*, 35 F.3d at 1039-40.

Because the ALJ has the opportunity to observe the demeanor and disposition of witnesses during the hearing process, the ALJ is best equipped to evaluate the credibility of witnesses. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). Yet, the ALJ is not permitted to make credibility determinations based upon "intangible or intuitive notion[s]" about an individual, *id*, instead, the ALJ's credibility finding must be supported by substantial evidence. *Cruse*, 502 F.3d at 542. When an ALJ decides to discredit a claimant's credibility, the ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In the case *sub judice*, the ALJ applied the two-part test and found that Menge's medical impairments could reasonably be expected to cause him back pain. But, at the second part of the test, the ALJ discounted Menge's statements regarding the intensity, persistence and limiting effects of the pain. Although the ALJ's opinion is eleven pages long, the Court finds that the

opinion lacks an adequate explanation of why the ALJ discredited Menge's statements and a proper analysis of this issue.

After indicating that he did not fully credit Plaintiff's statements regarding the severity of his pain, the ALJ provided a lengthy summary of Plaintiff's pertinent medical history between the years 2000 and 2009. Interestingly, the ALJ's discussion of the medical evidence here largely mirrored his comments accompanying his ruling at step two of the sequential analysis finding Plaintiff's back pain as a severe impairment. Though the ALJ's opinion provided much in the way of demonstrating that he was familiar with Plaintiff's medical history and the various medical opinions in the record, the opinion lacked sufficient analysis of how and why this evidence negatively impacted the ALJ's view of Plaintiff's claims.

Upon review of the ALJ's decision, there are only two portions of the opinion which could arguably be considered as the ALJ's attempt to provide some insight into his ruling. During his discussion of his Plaintiff's RFC, the ALJ stated:

> Dr. Kansal, in February 2000, stated that in an 8 hour workday that the claimant could only sit 2 hours, stand 2 hours, walk 2 hours, and drive 2 hours (Exhibit 7F). The undersigned Administrative Law Judge notes that Dr. Zellers indicated that the claimant must be permitted to place himself in a supine position. However, the record does not support a finding that the claimant was bedridden or that he had to lie in a supine position for pain control through the date last insured. In May 2009 the claimant complained of low back pain. He was at his daughter's over the weekend playing with his granddaughter and overdid a lot of activities and as a result had low back pain. He gave it a few days and it still had not gotten any better. He was ambulating well and in no distress. He was due to leave for North Carolina for 6 weeks (Exhibit 29F). Thus, more than 3 years after the date last insured, the claimant described being active playing with his granddaughter and planning to travel out of state. These activities do not describe an individual who would be described as bedridden or unable to perform work activities without a requirement that he be permitted to lay down.

(Tr. 18). The ALJ later stated:

> The undersigned Administrative Law Judge finds that the record post DLI do [sic] not support the residual functional capacity the claimant alleges. The evidence documents extreme complaints of limitations but the claimant remains fairly active more than 3 years after his date last insured. The record supports a finding that the claimant's impairment is relatively stable with the use of treatment including the pain pump. In view of the claimant's testimony, the clinical findings, and taking into consideration Social Security Ruling 96-7p, the preponderance of the evidence shows that allegations of pain and limitations which would preclude the performance of substantial gainful work activity are not credible.

(Tr. 19).

In the instant case, Plaintiff argues that the ALJ improperly discounted his allegations of pain based upon a single record from May 2009 in which Menge admitted to his doctor that during the prior weekend he had "overdid a lot of activities" including playing with his granddaughter, and as a result was experiencing low back pain. (Tr. 532). It was during this same visit that Plaintiff informed his doctor that he was planning to travel to North Carolina for six weeks.

Plaintiff's argument is well-taken. The ALJ's discussion of his credibility finding is narrow and limited. The ALJ looked to Menge's actions in 2009 to discredit Plaintiff's allegations of disabling pain experienced between the years 2000 and 2005. The ALJ's faulty comparison of Plaintiff's actions during these two different time periods was made evident by the language the ALJ used in his opinion. The ALJ noted that Menge "remains fairly active" and "is relatively stable". (Tr. 19). The ALJ's phrasing is stated in present tense, referring to Plaintiff's current actions. But, Plaintiff's ability to engage in certain activities in 2009 did not necessarily mean that Menge possessed the ability to perform these activities during the period under review. Additionally, the Court notes that Plaintiff's activities which the ALJ identified as symbolizing that Menge remained active, were not of such a robust nature that they

unquestionably undermined Plaintiff's allegations. For example, the ALJ believed Plaintiff's ability to play with his granddaughter conflicted with Menge's allegations of pain, but the undersigned notes Menge's granddaughter was only two years old, and that Plaintiff testified that he considered "just being with" his granddaughter to be "playing with her". *See* (Tr. 18-19, 46). Nor can the undersigned discern how Plaintiff's ability to travel to North Carolina patently undercut Plaintiff's credibility. The ALJ was aware that Plaintiff engaged in these activities several years after his disability benefits terminated, yet, the ALJ looked to this evidence to discount the pain Menge alleged to suffer from during the relevant period under review without further explanation as to why.

While it was appropriate for the ALJ to utilize Plaintiff's testimony and demeanor during the hearing to gage the truthfulness of Plaintiff's statements, the ALJ remained under a duty to supply a reasonable basis for discrediting Plaintiff. Though the record contains evidence which the ALJ *could have* identified in defense of his negative credibility finding, that actually offered by the ALJ was insufficient to convey why he disbelieved Menge's statements regarding his pain level between 2000 and 2005. In the end, the ALJ erred by failing to explain how Plaintiff's actions after the termination of his benefits conflicted with Plaintiff's claim of disabling pain over three years prior.

Furthermore, the Court notes, as did Plaintiff, that during the hearing the ALJ explicitly stated that he found Menge's testimony to be credible, and that he "wouldn't even think of not doing that." (Tr. 46). The statement is telling. Though it might not have bound the ALJ to ultimately credit Menge's statements, it did place a greater significance on the ALJ's duty to explain his unfavorable credibility finding. Because the ALJ advised Plaintiff that he credited Plaintiff's statements, the ALJ should have ensured that his written decision clearly explained

why his view of Plaintiff's credibility had changed. But, the ALJ's opinion falls short of doing so.

Despite the ALJ's substantial recitation of Menge's medical history, the ALJ failed to properly convey what part of this evidence detracted from Plaintiff's statements regarding his condition during the period under review. Although the ALJ mentioned that Plaintiff's impairment seemed to be stabilized through treatment with a pain pump, the ALJ acknowledged that Plaintiff underwent approximately 12 surgical procedures relating to his pain pump and spinal cord stimulator during the relevant period. It is also unclear whether the ALJ looked to medical evidence outside of the relevant disability period in reaching his conclusion that Menge's condition was stable, and, if so, how such evidence was sufficiently probative. As a result, the undersigned finds that the ALJ's credibility finding is not supported by the record. On remand, the ALJ should re-evaluate the credibility of Plaintiff's statements. Should the ALJ find Plaintiff's statements to be incredible, the ALJ must adequately explain why he thus concludes. The ALJ's reasons should allow the Court and the claimant to clearly understand why the ALJ did not believe Plaintiff's statements regarding the severity of the pain Menge alleged to suffer during the relevant disability period. SSR 96-7p; *Cunningham*, 360 F. App'x at 613.

### 2. Opinions from Treating Physician & Hypothetical Question Posed To VE

Menge next argues that the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Sonil Kansal. Dr. Kansal issued two opinions which are particularly relevant to Plaintiff's disability application. First, on February 3, 2000, Dr. Kansal indicated that Menge could not sit, stand, walk, or drive for more than two hours each workday. Dr. Kansal also opined that Menge could not bend, stoop, crawl, climb, reach above shoulder level, crouch, kneel, push, pull, twist, or lift or carry more than 25 pounds. Second, on October 13, 2000, Dr.

Kansal opined that Plaintiff's lumbar sprain had progressed and changed into lumbar radiculopathy.

The ALJ acknowledged Dr. Kansal's February 2000 report and the limitations the doctor imposed on Menge's ability to sit, stand, walk, drive and lift. But, the ALJ did not explicitly mention the other postural limitations noted by Dr. Kansal. Plaintiff contends that the ALJ erred by omitting reference to these postural limitations, and by failing to specify the weight he attributed to Dr. Kansal's overall opinion or giving reasons for discounting the postural limitations identified by the doctor. Additionally, Plaintiff attacks the ALJ's reliance upon the VE's testimony at step five of the evaluation process because the ALJ did not include Dr. Kansal's postural limitations in the hypothetical questions he posed to the VE.

It is not necessary for the Court entertain Plaintiff's final two assignments of error since remand is proper on other grounds. However, to ensure that remand is not futile, the Court will briefly address a portion of Plaintiff's argument. Neither the ALJ nor the Commissioner questioned Dr. Kansal's status as Plaintiff's treating physician. Accordingly, the ALJ's evaluation of Dr. Kansal's opinion should have complied with the treating source rule. An opinion from a treating source is entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When a treating source's opinion is not entitled to controlling weight, the ALJ must consider a number of factors enumerated in 20 C.F.R. § 404.1527(c) to determine how much weight the opinion is entitled to receive. *See id.* The regulations also require an ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id*.

Here, the ALJ acknowledged that Dr. Kansal's opinion deserved special consideration under the treating source rule, but the ALJ neglected to indicate how much weight he assigned to the doctor's opinion or give good reasons for the weight given to the opinion. Although the ALJ was not obligated to mention every aspect of Dr. Kansal's opinion as Plaintiff alleges, *see Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999), given the facts of this case, it was important for the ALJ to explain how and why he rejected Dr. Kansal's findings.

Dr. Kansal's report from February 2000 estimated that Menge would be able to return to regular work duties by the end of February; yet, in October 2000 Dr. Kansal indicated that Plaintiff's condition had worsened. However, the doctor's October 2000 letter did not indicate whether Menge remained under the same work restrictions iterated in his February 2000 report. Without some statement from the ALJ, it is impossible for the Court to know how the ALJ resolved this conflict, and how he weighed Dr. Kansal's opinion in relation to the other medical evidence in the record. Though the ALJ supplied some analysis of why he discounted the consultative examiner's finding that Plaintiff needed to be permitted to lay in a supine position throughout the day, the ALJ did not explain why he did not credit Dr. Kansal's findings.

To whatever extent, if any, the ALJ relied upon Menge's statements to his doctors in May 2009 to discredit Dr. Kansal's opinion, the ALJ did not put forth a reasonable basis for doing so. Menge's actions nine years later do not have any reasonable bearing on Dr. Kansal's findings. Therefore, on remand, the ALJ must re-assess Dr. Kansal's opinion and articulate good reasons for the weight given to the opinion, if the ALJ finds it is not entitled to complete deference. Because the undersigned finds that the ALJ did not adhere to the treating source rule with respect to Dr. Kansal's opinion, it is not necessary to address Plaintiff's objection to the hypothetical questions the ALJ posed to the VE. Should the ALJ on remand seek the testimony of a VE to

reach his ruling at step five of the sequential analysis, the VE's testimony will only constitute substantial evidence to support the ALJ's finding if the hypothetical question posed accurately describes Plaintiff's mental and physical limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Finally, because remand is proper on other grounds, the ALJ should also reevaluate whether Plaintiff's severe impairment(s) meet or equal listing level. The ALJ's subsequent opinion should provide some explanation as to why the ALJ thus concludes affirmatively or negatively.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: July 25, 2012.